I respectfully dissent from the majority opinion in this case and submit the following reasons therefor:
The charge that the agents and employees of the defendant sanitarium, who had part in the preparations for and the delivery of the infant, were incompetent, it is held, is refuted by the record. This includes Miss Smith, the undergraduate nurse. She had participated in at least thirty maternity cases, the number required for graduation, and of this number some one-half dozen were Dr. Mays' cases.
If the sanitarium is liable to plaintiff in any manner or to any extent, it is because of Miss Smith's action in allowing the overheated bottles to remain in the incubator after the infant was laid therein; not because the bottles were originally overheated. It was intended that the incubator be heated by the bottle to the temperature necessary in a case of this character and be removed before the baby was deposited therein. Miss Smith overlooked, in the stress of the moment, moving the bottles as intended. These bottles were side by side across the bottom of the incubator exposed when Dr. Mays placed the baby thereon. He testified that he did not see them. Mrs. Prater, the special nurse, testified that they were exposed with nothing between them and the baby's body except the gown.
Miss Smith was in the general employ of the sanitarium and it is responsible, under the doctrine respondeat superior, for her carelessness and negligence during the existence of this relationship. But that relationship ceased when she entered the operating room and became subject to Dr. Mays' orders and directions. From that moment on, the doctrine of respondeat superior ceased. She then became the special agent of Dr. Mays or of the plaintiff.
It is conceded that the physician in charge in a case of this character is the "monarch of all he surveys", and that his orders, instructions and directions to nurses, general employees of the institution, are final and supreme. Such orders, etc., are to be observed without question; and this is as it should be.
The record sustains, in my humble opinion, the contention that Miss Smith, at a time when no harm had been done the baby, undertook to remove the bags from beneath it and was prevented only by the order of Dr. Mays. She did remove the middle bag and placed it at the infant's feet. Dr. Mays flatly denies that he gave Miss Smith such an order but the distinct preponderance of the testimony is to the contrary. Three of the four other nurses present agreed with Miss Smith. The fourth nurse was not interrogated on the subject.
Misses Vashti Wimberly, Marjorie May and Rosalie Huddleston positively corroborate in essential detail, Miss Smith's version of what happened. The two first named were at the time undergraduate nurses. Miss Wimberly married before graduating and now lives at Ringgold, Louisiana. Miss May did graduate and now practices her profession in Hope, Arkansas. Miss Huddleston was then a graduate and now works in the defendant sanitarium. Miss Smith graduated five months after the accident and is now connected with the sanitarium. *Page 373 
Even though it might be contended that because of their present employment by the sanitarium, Misses Smith and Huddleston would be disposed to color their testimony, such cannot apply to the other two nurses who at time of trial and for some time prior had no connection with the defendant; yet, their testimony fully corroborates that of Miss Smith in regard to removing the water bags.
Therefore, it seems to me that the negligence of Miss Smith, granting that she was negligent, ended with her efforts to remove the bags, under the circumstances above related. The chain of causation was there broken. Her negligence passed into the realm of remoteness and that of Dr. Mays became the efficient, proximate cause of the injury. 45 C.J. 931, 932.
The two physicians, besides Dr. Mays, who testified in the case, state that it was their invariable rule and practice and also that of the profession, so far as they knew, to test an incubator's temperature prior to placing a baby therein.
One outstanding physical fact definitely affirms the contention that Miss Smith did remove the center water bag, and that is the location of the burns. One is on the left scapula and the other at the left flank. Between these two burns, a space equal to the width of one bag, there are no burns whatever. This also proves that the burns were not serious at the time of the removal of the middle bag, which, the testimony shows, was within a few minutes after the baby was placed in the incubator by Dr. Mays.